[No. 19827-4-II.    Division Two.    November 21, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v.
THALMERS RAY JAMES, *Appellant*.

*Keith A. MacFie* of *Daly & MacFie,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Thomas C. Roberts, Deputy,* for respondent.

MORGAN, J. — On March 30, 1995, Thalmers Ray James and Sherene Stetze were sharing a house. According to her, she fell asleep in the bedroom, but awakened about 4:30 P.M. as James was hitting her with his hand. After striking her repeatedly, James put a shotgun near her head and, at one point, in her mouth. He said he would kill her unless she would submit to sexual intercourse, and she submitted to his demand.

Afterward, James followed her into the bathroom, where he threw her to the floor, beat her, and accused her of sleeping with his father and brother. He said that if she did not confess to his accusations, he would beat her to death. She acceded to what he was saying, but he nonetheless jumped on her and choked her into unconsciousness.

When she came to, they began to argue, and he punched her. Later, he said he would shoot her with the shotgun unless she made a sandwich for him. She did, but he nevertheless punched her again. Finally, he forced her to lie in water he had poured on the living room floor, and he tied a noose around her neck to keep her from leaving. She fell asleep on the floor about 4:30 A.M. on March 31.

About 9 A.M., Stephanie Smith arrived. She noticed

bruising and cuts on Stetze's face. During the morning—the precise time is not clear from the record—James picked up the shotgun and told Smith and Stetze, in essence, that if they reported him to the police, he would kill Stetze.

Around noon, Sherry Deyette arrived and noticed that Stetze had a black eye. James was sitting on the living room couch, and he told Deyette that she should not call the police.

Police received a report of domestic violence at 12:42 P.M. They arrived at the house five or ten minutes later. They left when Stetze told them that her injuries had not been caused by James, and that the person who had caused them was no longer present. According to Smith and Stetze, neither told the police what had actually happened, because they were afraid James would carry out his threat to kill Stetze. A half hour later, the police returned to the house and arrested James. They did not find the shotgun, but they did find numerous shotgun shells and a rope tied into a noose.

James was in jail between arrest and trial. During that time, according to a cellmate, he offered the cellmate and two others $50,000 to kill Stetze before she could testify.

James was charged in an amended information with solicitation to commit first degree murder (Count I), first degree assault (Count II), unlawful imprisonment (Count III), fourth degree assault (Count IV), intimidating a witness—Stetze (count V), intimidating a witness—Smith (Count VI), and first degree rape (Count VII). A jury trial commenced May 31. Stetze and Smith testified as described above. On Count II, the jury acquitted of first degree assault but convicted on the lesser included offense of second degree assault. On Counts V and VI, the jury convicted as charged. On the remaining counts, the jury was unable to reach verdicts.

After the State decided not to seek a second trial, the trial court sentenced James to 84 months on Count II, 102 months on Count V, and 102 months on Count VI. The

court ordered that each sentence run concurrently with the others, but consecutively to the sentence imposed in a different felony case the day before. James now appeals.

Relying on *State v. Wiley*,[1] James argues that a person cannot be convicted of intimidating a witness if the threat relied on by the State was made before an investigation was pending. Thus, he says, his conduct in telling Smith and Stetze that if they reported him to the police, he would kill Stetze, will not support his convictions on Counts V and VI.

Counts V and VI are based on RCW 9A.72.110(1). Between 1985 and 1994, it provided:

> A person is guilty of intimidating a witness if a person directs a threat to a former witness because of the witness' testimony in any official proceeding, or if, by use of a threat directed to a current witness or a person he has reason to believe is about to be called as a witness in any official proceeding or to a person whom he has reason to believe may have information relevant to a criminal investigation, he attempts to:
>
> (a) Influence the testimony of that person; or
>
> (b) Induce that person to elude legal process summoning him to testify; or
>
> (c) Induce that person to absent himself from such proceedings.[2]

While this version of the statute was in effect, Division One decided *Wiley*. In that case, the defendant told a woman whom he had assaulted that if she tried to send him to jail, he would send nude pictures of her to her mother. Several weeks later, the woman contacted the police, and they began to investigate. Reversing the defend-

---

[1]57 Wn. App. 533, 789 P.2d 106 (1990).

[2]LAWS OF 1985, ch. 327, § 2; *Wiley*, 57 Wn. App. at 535.

ant's conviction for intimidating a witness, Division One held that the intimidating statute had originally applied only when an official proceeding was in progress; that it had later been amended to apply when an investigation was in progress, even though an official proceeding was not; and if it was to be further amended to apply when an investigation was not yet in progress, the amendment should come from the Legislature. It concluded that "threats made to prevent *the reporting* of a crime," before any investigation was in progress, were insufficient to support conviction.[3]

■ Apparently responding to *Wiley*, the Legislature amended the statute in 1994.[4] Finding

> that the period before a crime or child abuse or neglect is reported is when a victim is most vulnerable to influence, both from the defendant or from people acting on behalf of the defendant and a time when the defendant is most able to threaten, bribe, and/or persuade potential witnesses to leave the jurisdiction or withhold information from law enforcement agencies[,][5]

the Legislature added subsection (d) as follows:

> A person is guilty of intimidating a witness if a person directs a threat to a former witness because of the witness' testimony in any official proceeding, or if, by use of a threat directed to a current witness or a person he or she has reason to believe is about to be called as a witness in any official proceeding or to a person whom he or she has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child, he or she attempts to:
>
> (a) Influence the testimony of that person; or
>
> (b) Induce that person to elude legal process summoning him or her to testify; or

---

[3]*Wiley*, 57 Wn. App. at 536.

[4]*See* LAWS OF 1994, ch. 271, § 204.

[5]LAWS OF 1994, ch. 271, § 201.

(c) Induce that person to absent himself or herself from such proceedings; or

(d) Induce that person not to report the information relevant to a criminal investigation or the abuse or neglect of a minor child, not to prosecute the crime or the abuse or neglect of a minor child, not to have the crime or the abuse or neglect of a minor child prosecuted, or not to give truthful or complete information relevant to a criminal investigation or the abuse or neglect of a minor child.[6]

Today, then, RCW 9A.72.110 criminalizes threats made to induce a person not to report a crime and, necessarily, threats made before an investigation is commenced. Hence, the present contention fails, and James' threat to Smith and Stetze is sufficient to support his convictions on Counts V and VI.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., and SEINFELD, J., concur.

Review denied at 135 Wn.2d 1005 (1998).